IN THE U.S. DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

---oOo---

ORIGINAL

---

ANDREA BEARD,                    )
                                 )
        Plaintiff,               )
vs.                              )No. 2:10-02218-KJM-GGH
                                 )
SENTRY CREDIT, INC.,             )
                                 )
        Defendants.              )
                                 )

---

DEPOSITION OF ANDREA BEARD, at the Law Offices

of Lewis, Brisbois, Bisgaard & Smith, 2850 Gateway

Oaks Drive, Suite 450, Sacramento, California,

commencing at 10:02 a.m., Thursday, June 30,

2011, before Elizabeth A. Willis-Lewis, CLR, RPR,

CSR No. 12155.

Pages 1 - 43



```
 1    APPEARANCES OF COUNSEL:

 2

 3        FOR THE PLAINTIFF:

 4            LAW OFFICES OF JACOB SIDER
              BY:  JACOB SIDER, ESQ.
 5            5581 Taft Avenue
              Oakland, California 94618
 6            (510) 287-6249
              jacobsider@gmail.com
 7

 8

          FOR THE DEFENDANTS:
 9
              LEWIS, BRISBOIS, BISGAARD & SMITH, LLP
10            BY:  PATRIK JOHANSSON, ESQ.
              221 N. Figueroa Street
11            Suite 1200
              Los Angeles, California 90012
12            (213) 250-1800
              johansson@lbbslaw.com
13

14

15

16

17

18

19

20

21

22

23

24

25
```

**Ben Hyatt Certified Deposition Reporters**
**888.272.0022   818.343.7040   Fax 818.343.7119   www.benhyatt.com**

1                    ANDREA BEARD,

2        having been first duly sworn, testified as follows:

3                        ---oOo---

4            EXAMINATION BY MR. JOHANSSON:

5        Q.    Good morning.  My name is Patrick Johansson

6    and I represent the defendant in this matter, Sentry

7    Credit.  Throughout this deposition I might refer to

8    them as "Sentry."  If I do that do you understand what I

9    am referring to?

10       A.    Yes.

11       Q.    Could you please state and spell your name for

12   the record?

13       A.    Andrea Beard, A-n-d-r-e-a, B-e-a-r-d.

14       Q.    Have you ever gone by any other name?

15       A.    No.

16       Q.    Have you ever had a deposition taken before?

17       A.    No.

18       Q.    Have you ever been involved in a lawsuit

19   before?

20       A.    No.

21       Q.    Let me just go -- I am sure your counsel might

22   have mentioned it briefly out in the hallway, the ground

23   rules for deposition.  I am going to be asking you

24   questions here today; you are going to provide me with

25   answers and the court reporter here is -- to my left is

1    going to write down everything we say.  At the end of

2    the deposition she is going to put it -- transcribe it

3    into a little booklet that you will have an opportunity

4    to read and if you see anything that you think is wrong,

5    that your testimony is not correct, you will have a

6    chance to change that.  However, if you do change

7    substantive things we can comment on that if this case

8    goes to trial and it will -- that could negatively

9    affect your credibility.  Do you understand that?

10        A.    Yes.

11        Q.    And because of that it is important that we get

12   your best testimony here today.  Okay?

13        A.    Okay.

14        Q.    Also, after I ask the question here your

15   counsel might object to my question.  However, if your

16   counsel doesn't tell you -- if he doesn't instruct you

17   not to answer you can just go ahead and answer the

18   question.  Okay?

19        A.    Okay.

20        Q.    If he instructs you not to answer you shouldn't

21   answer.  Do you understand that?

22        A.    Yeah.

23        Q.    Also, you are doing a good job so far, but

24   please answer with a "yes" or "no" instead of shaking

25   your head or nodding or "uh-huh" because those are very

**Ben Hyatt Certified Deposition Reporters**
**888.272.0022   818.343.7040   Fax 818.343.7119   www.benhyatt.com**

**Andrea Beard - 6/30/2011**

1     hard for the court reporter to take down.  Okay?

2         A.    Yes.

3         Q.    And your testimony here today is the same --

4     has the same effect as if you were testifying in a trial

5     in front of a judge.  It is the same penalty of perjury

6     that applies to that.  Do you understand that?

7         A.    Yes.

8         Q.    Also, we don't want you to guess at today's

9     deposition.  I am entitled to your best estimate, but I

10    don't want you to guess.  Do you understand the

11    difference between a guess and an estimate?

12        A.    Yes.

13        Q.    Also, any time if you need to take a break just

14    let me know.  This is not going to take very long --

15        A.    Okay.

16        Q.    -- but do let me know.  Are you taking any

17    medications or anything that could affect your ability

18    to memorize (sic) things or your ability to testify

19    today?

20        A.    No.

21        Q.    Any other reason why you couldn't give your

22    best testimony today?

23        A.    No.

24        Q.    Have you reviewed any documents in preparation

25    for today's deposition?

**Ben Hyatt Certified Deposition Reporters**
**888.272.0022   818.343.7040   Fax 818.343.7119   www.benhyatt.com**

1            MR. SIDER:  I will caution you not to discuss

2     any conversations you have had with any of your

3     attorneys regarding reviewing those documents.  But

4     outside of that please answer to the best of your

5     ability.

6            THE DEPONENT:  Outside of --

7            MR. SIDER:  May I?

8            MR. JOHANSSON:  Absolutely.

9            MR. SIDER:  So it is okay to answer about the

10    review of the documentation if you want to name the

11    documents or describe them to Mr. Peterson, but please

12    don't share any discussions that you had with your

13    attorneys that you had while you were reviewing those

14    documents.  Is that clear?

15           THE DEPONENT:  Yeah.  I was sent documents, but

16    I wasn't able to open them so I haven't reviewed -- I

17    have not.

18    BY MR. JOHANSSON:

19    Q.    And other than with your attorneys have you

20    discussed today's deposition with anyone?  And again, I

21    don't want to know about any discussions you had with

22    counsel.

23    A.    No.

24    Q.    Have you ever discussed the subject of this

25    case with anyone other than your attorneys?

Ben Hyatt Certified Deposition Reporters
888.272.0022  818.343.7040  Fax 818.343.7119  www.benhyatt.com

Andrea Beard - 6/30/2011

```
1      A.    Yes.

2      Q.    And who have you discussed it with?

3      A.    My son.

4      Q.    What is the name of your son?

5      A.    Lamont Beard.

6      Q.    How old is your son?

7      A.    He is 20.

8      Q.    Does he live with you?

9      A.    Yes.

10     Q.    And what kind of discussions have you had with

11   your son regarding the case?

12     A.    Just what happened the day on the telephone

13   when I told the person -- I spoke with the

14   representative -- what happened in that conversation.

15     Q.    Any other discussions with your son regarding

16   the lawsuit?

17     A.    No.

18     Q.    What is your date of birth?

19     A.    6-20-71.

20     Q.    You already testified that you live with your

21   son.  Anyone else living in your household?

22     A.    My daughter.

23     Q.    What is the name of your daughter?

24     A.    Mariah Roth.

25     Q.    And how old is Mariah?
```

**Ben Hyatt Certified Deposition Reporters**
888.272.0022   818.343.7040   Fax 818.343.7119   www.benhyatt.com

1      A.    12.

2      Q.    Anyone else living at your household?

3      A.    No.

4      Q.    Are you married?

5      A.    No.

6      Q.    Do you have any other children besides the two

7    you have already mentioned?

8      A.    No.

9      Q.    Where do you currently live?

10     A.    Stockton, California.

11     Q.    What is the address?

12     A.    9250 Kirkby, K-i-r-k-b-y, Lane.

13     Q.    How long have you lived at Kirkby Lane?

14     A.    Since November of 2010.

15     Q.    Where did you reside prior to Kirkby Lane?

16     A.    8813 Kelly Drive.

17     Q.    How long did you live on Kelly Drive,

18   approximately?

19     A.    A year and six months.

20     Q.    Would it be accurate if I said during all

21   communications between you yourself and my client you

22   lived at Kelly Drive?

23     A.    Yes.

24     Q.    What phone number did you have while you were

25   living at Kelly Drive?

Andrea Beard - 6/30/2011

1           MR. SIDER:  Objection.  That assumes a fact not

2    in evidence -- that there was only one phone number.

3    But you can answer to the best of your ability, please.

4           THE DEPONENT:  209-952 -- wait.  952-8864.

5    BY MR. JOHANSSON:

6       Q.   Did you have any other telephone number while

7    living at Kelly Drive?

8       A.   No.

9       Q.   Is that a land line or a cell phone?

10      A.   Land line.

11      Q.   Did you have a cell phone while living at Kelly

12   Drive?

13      A.   No.

14      Q.   Do you have a different phone number today?

15      A.   Yes.

16      Q.   What is that phone number?

17      A.   209-922-7862.

18      Q.   Did you switch from the 952 number to the 922?

19      A.   No, that is a cell phone.

20      Q.   That is a cell phone?

21      A.   Um-hum.

22      Q.   Do you still have the 952 -- no?

23      A.   No.

24      Q.   When was that number disconnected?

25      A.   I am not sure.

Ben Hyatt Certified Deposition Reporters
888.272.0022   818.343.7040   Fax 818.343.7119   www.benhyatt.com

Andrea Beard - 6/30/2011

1     Q.   Could you give me an estimate?  Was it when you

2   moved?

3     A.   It was probably -- maybe a month before I

4   moved.

5     Q.   A month?

6     A.   Maybe.

7     Q.   Was all the communications between my client

8   and you on the 209-952-8864 number?

9     A.   Yes.

10     Q.   Did you graduate from high school?

11     A.   Yes.  Well, no.  I got my GED.

12     Q.   When did you get your GED?

13     A.   June of 1990.

14     Q.   Any post-high school education, college or

15   university?

16     A.   Yes.

17     Q.   What college or university?

18     A.   San Joaquin Delta College.

19     Q.   What years did you attend that college?

20     A.   It was off-and-on, so I am not sure.  It was

21   off-and-on.

22     Q.   Could you give me an estimate on what -- the

23   years, approximately?

24     A.   Oh, my God.  I started in maybe 1994.  It was

25   part-time.  So it was off-and-on since then.

Ben Hyatt Certified Deposition Reporters
888.272.0022   818.343.7040   Fax 818.343.7119   www.benhyatt.com

Andrea Beard - 6/30/2011

```
1       Q.    Until when?

2       A.    Maybe two years ago.

3       Q.    Did you obtain a degree from college?

4       A.    No.

5       Q.    Any other college education?

6       A.    No.

7       Q.    Now, besides your GED do you have any school

8    certificates from trade schools or anything like that?

9       A.    No.

10      Q.    How about any licenses -- professional licenses?

11      A.    No.

12      Q.    Have you ever been in the military?

13      A.    No.

14      Q.    Who is your current employer?

15      A.    I am not working.

16      Q.    When was the last time you had a job?

17      A.    December of 2010.

18      Q.    Who did you work for in December of 2010?

19      A.    Home Depot.

20      Q.    What time period did you work for Home Depot?

21      A.    November of 2010 to December of 2010.

22      Q.    What about prior to Home Depot?

23      A.    West Asset Management.

24      Q.    What kind of business does West Asset

25   Management do?
```

Ben Hyatt Certified Deposition Reporters
888.272.0022   818.343.7040   Fax 818.343.7119   www.benhyatt.com

**Andrea Beard - 6/30/2011**

1    A.    Collections.

2    Q.    So you were a debt collector at West Asset

3    Management?

4    A.    Yes.

5    Q.    What types of debt did you collect?  Only

6    consumer debts or commercial and consumer?

7    A.    Mortgages.

8    Q.    Only mortgages?

9    A.    Yes.

10   Q.    Was it for a specific company -- for a specific

11   mortgage company?

12   A.    I am not allowed to tell you that.  I signed

13   documents regarding that.

14   Q.    That's fine.  During what time frame did you

15   work for West Asset Management?

16   A.    October of 2006 to November of 2010 -- no,

17   2008.

18   Q.    October --

19   A.    October 2008.

20   Q.    Prior to West Asset Management who did you work

21   for?

22   A.    Teletech.

23   Q.    And what kind of business does Teletech do?

24   A.    Health care.

25   Q.    What was your position at Teletech?

**Ben Hyatt Certified Deposition Reporters**
**888.272.0022   818.343.7040   Fax 818.343.7119   www.benhyatt.com**

Andrea Beard - 6/30/2011

1       A.    Customer service.

2       Q.    No debt collection while you were at Teletech?

3       A.    No.

4       Q.    How long were you at Teletech?

5       A.    October of 2006 to June of 2008.

6       Q.    Now, while you were with West Asset Management

7    were you a collector?  That was your title the whole

8    time?

9       A.    Yes.

10      Q.    Prior to Teletech who did you work for?

11      A.    It was a temporary service.  I worked for

12   Comcast.

13      Q.    And what did you do for Comcast?

14      A.    Basic customer service, cable.

15      Q.    How long did you work for them?

16      A.    Six months.  I don't know the time.

17      Q.    Okay.  Other than West Asset Management have

18   you ever worked in debt collection before?

19      A.    No.

20      Q.    Did you receive training on the FDCPA while

21   working for West Asset Management?

22      A.    Yes.

23      Q.    What type of training?

24      A.    A full training on all debt collections, how we

25   are supposed to collect debts.

Ben Hyatt Certified Deposition Reporters
888.272.0022   818.343.7040   Fax 818.343.7119   www.benhyatt.com

**Andrea Beard - 6/30/2011**

1      Q.   Was it a seminar or was it online?

2           MR. SIDER:  I am going to object.  It is

3    unintelligible.  But please answer to the best of your

4    ability.

5           THE DEPONENT:  It was person-to-person.

6    BY MR. JOHANSSON:

7      Q.   And how long did that training last for?

8      A.   Eight weeks.

9      Q.   Eight weeks.  Was that every day every Monday

10   through Friday?

11     A.   Yes.

12     Q.   For eight hours every day?

13     A.   Yes.

14     Q.   And did they cover the Rosenthal Act during the

15   same training?

16     A.   I am not sure.

17     Q.   Do you know what the Rosenthal Act is?

18     A.   I am not sure, no.

19     Q.   Do you know what the California Debt Collection

20   Act is?

21     A.   Yes.

22     Q.   Were you ever involved in any lawsuits with

23   West Asset Management?

24           MR. SIDER:  Objection.  Vague.  But please

25   answer.

**Ben Hyatt Certified Deposition Reporters**
888.272.0022   818.343.7040   Fax 818.343.7119   www.benhyatt.com

Andrea Beard - 6/30/2011

1           THE DEPONENT:  No.

2       BY MR. JOHANSSON:

3       Q.   Do you know if West Asset Management were sued

4   while you worked there for FDCPA violations?

5       A.   Yes.

6       Q.   But you had nothing to do with those lawsuits?

7           MR. SIDER:  Objection.  Vague.  But please do

8   answer.

9           THE DEPONENT:  I had nothing to do with them.

10      BY MR. JOHANSSON:

11      Q.   Why did you quit working for West Asset

12  Management?

13      A.   I went to work for Home Depot.

14      Q.   So you just switched jobs?

15      A.   Yes.

16      Q.   Was there any particular reason why you

17  switched jobs?

18      A.   Better hours.

19      Q.   Anything else?

20      A.   No.

21      Q.   Now, other than Sentry Credit, have you ever

22  been contacted by any other debt collectors?

23      A.   Yes.

24      Q.   Could you tell me how many other companies --

25  debt collection companies?

Ben Hyatt Certified Deposition Reporters
888.272.0022   818.343.7040   Fax 818.343.7119   www.benhyatt.com

**Andrea Beard - 6/30/2011**

```
 1      A.    Are you asking a specific time frame or --

 2      Q.    Say, in the last 10 years.

 3      A.    Many.

 4      Q.    Could you give me an estimate?

 5      A.    No, I cannot.

 6      Q.    More than 10?

 7      A.    Yes.

 8      Q.    More than 20?

 9      A.    Yes.

10      Q.    Do you know the names of any of them?

11      A.    Not offhand.

12      Q.    Did any of the debt collection companies ever

13   file suit against you?

14      A.    No.

15      Q.    What types of debt was that regarding?

16   Consumer debts?

17      A.    It was a lot of debt -- a lot.  So, I mean,

18   that's hard to answer over 10 years.

19      Q.    What -- do you know how consumer debt is

20   defined?

21      A.    Yes, I do, but it was a lot of debt.

22      Q.    Was there any debt relating to a company you

23   owned?

24      A.    No.

25      Q.    Any debt relating to a business expense?
```

**Ben Hyatt Certified Deposition Reporters**
**888.272.0022   818.343.7040   Fax 818.343.7119   www.benhyatt.com**

Andrea Beard - 6/30/2011

```
 1      A.    No.
 2      Q.    Did any of these debt collection companies make
 3   negative reports on your credit to the credit bureaus?
 4      A.    Yes.
 5      Q.    Do you know if my client ever reported your --
 6   you to the credit bureaus?
 7      A.    I am not sure.
 8      Q.    How many of these debt collection companies,
 9   say in the last five years, have reported debts to the
10   credit bureaus?
11           MR. SIDER:   Objection --
12   BY MR. JOHANSSON:
13      Q.    Negative information to the credit bureaus?
14           MR. SIDER:   Objection.   Assumes a fact not in
15   evidence.   But please do answer to the best of your
16   ability.
17           THE DEPONENT:   I am not sure how many.
18   BY MR. JOHANSSON:
19      Q.    More than five?
20      A.    Yes.
21      Q.    How about in 2010?   Do you know specifically in
22   2010 if anyone --
23      A.    No.
24      Q.    How would you describe your credit in 2010?
25   Was it not good or good?
```

**Ben Hyatt Certified Deposition Reporters**
888.272.0022   818.343.7040   Fax 818.343.7119   www.benhyatt.com

1         MR. SIDER:  Objection.  Compound.  Objection.

2    Vague.  But please do answer to the best of your

3    ability.

4         THE DEPONENT:  I would say fair -- good, fair.

5    BY MR. JOHANSSON:

6    Q.   Do you know what credit score you had in 2010?

7    A.   Maybe a 580 or above.

8    Q.   But you don't know if my client caused your

9    credit score to decrease?

10   A.   No.

11   Q.   Have you ever sent any letters or packages to

12   my client, Sentry Credit?

13   A.   No.

14   Q.   Did Sentry Credit ever send any letters or

15   packages to you?

16        MR. SIDER:  Objection.  Assumes a fact not in

17   evidence.  But please do answer.

18        THE DEPONENT:  I am not sure.

19   BY MR. JOHANSSON:

20   Q.   I probably should have told you as part of the

21   admonitions if you don't know the answer to the

22   question, "I don't know," is a perfectly fine answer.

23   This is not a --

24   A.   I don't know.

25   Q.   We are not testing your memory here.  It is a

Ben Hyatt Certified Deposition Reporters
888.272.0022   818.343.7040   Fax 818.343.7119   www.benhyatt.com

**Andrea Beard - 6/30/2011**

1   while back.

2        A.    I don't know.

3        Q.    Have you ever called Sentry Credit?

4        A.    No.

5        Q.    Has Sentry Credit ever called you?

6              MR. SIDER:  Objection.  Assumes a fact not in

7   evidence.  But you may answer.

8              THE DEPONENT:  Yes.

9        BY MR. JOHANSSON:

10       Q.    How many times did Sentry Credit call you?

11             MR. SIDER:  Objection.  Assumes facts not in

12  evidence, calls for speculation.  But you can, please,

13  answer.

14             THE DEPONENT:  They called me several times.

15       BY MR. JOHANSSON:

16       Q.    When you say, "several," can you give me an

17  estimate?

18       A.    More than 10.

19       Q.    So less than 20?

20       A.    I am not sure.

21       Q.    How would you know that it was Sentry Credit

22  that called you?

23             MR. SIDER:  I will object that is compound.

24  But please do answer.

25             THE DEPONENT:  I looked at the number.  That is

**Ben Hyatt Certified Deposition Reporters**
**888.272.0022   818.343.7040   Fax 818.343.7119   www.benhyatt.com**

Andrea Beard - 6/30/2011

1    all I saw was the number.

2         BY MR. JOHANSSON:

3         Q.    You said you saw the number.  How do you know

4    the number belongs to Sentry Credit?

5              MR. SIDER:  Again, compound question.  But

6    please do answer.

7              THE DEPONENT:  That is when I contacted the

8    attorney and I found out it was Sentry Credit.

9         BY MR. JOHANSSON:

10        Q.    Did someone refer you to the attorney?

11        A.    I did.

12        Q.    You knew the attorney?

13        A.    No.  I looked online.

14        Q.    Now, during this time period you alleged that

15   Sentry Credit called you did you receive calls from any

16   other debt collection companies?

17             MR. SIDER:  Objection.  Assumes facts not in

18   evidence and calls for speculation.  But please do

19   answer.

20             THE DEPONENT:  I don't know.  I don't know at

21   the time.

22        BY MR. JOHANSSON:

23        Q.    Do you know if Sentry Credit ever called you

24   multiple times during the same day?

25        A.    Yes.

Ben Hyatt Certified Deposition Reporters
888.272.0022  818.343.7040  Fax 818.343.7119  www.benhyatt.com

Andrea Beard - 6/30/2011

1      Q.   How many times in one day?

2      A.   More than seven.

3      Q.   So if someone called you back in 2010 you had a

4   little thing so the number of the person that called

5   popped up; is that correct?

6      A.   Yes.

7      Q.   Is that how you know it was more than seven?

8      A.   No.

9      Q.   So how do you know that it was more than seven

10   calls from my client?

11      A.   It is just an estimation.

12      Q.   What time frame -- how many months was my

13   client calling you?

14           MR. SIDER:  I am going to object that is

15   vague.  But you can answer, please.

16           THE DEPONENT:  I would say more than five.

17   BY MR. JOHANSSON:

18      Q.   Do you recall what year?

19      A.   2010.

20           MR. SIDER:  Sorry.  go ahead.

21   BY MR. JOHANSSON:

22      Q.   Did you ever speak to anyone at Sentry Credit?

23      A.   Yes.

24      Q.   How many times did you have an actual

25   conversation with someone from Sentry Credit?

Ben Hyatt Certified Deposition Reporters
888.272.0022  818.343.7040  Fax 818.343.7119  www.benhyatt.com

1     A.    I don't recall how many.  I recall one, maybe

2     more.

3        Q.   Okay.  You said you specifically recall one

4     time?

5        A.    Yes.

6        Q.   Do you recall -- did the person from Sentry

7     Credit introduce themself?

8        A.    No.

9        Q.   How long did the conversation last for?

10       A.    Less than five minutes.

11       Q.   Was it a man or a woman who called you?

12       A.    A man.

13       Q.   Could you tell me about the contents of that

14    conversation?

15            MR. SIDER:   Objection.  Vague, calls for a

16    narrative response.  But you can, please, answer.

17            THE DEPONENT:   Conversation started when I told

18    the person that they were calling several times and they

19    were violating FDCPA.

20            BY MR. JOHANSSON:

21       Q.   And what did the person respond when you said

22    that?

23       A.    Basically that -- he responded very rudely to

24    me and I specifically told him that he shouldn't be

25    speaking to me like that.

Ben Hyatt Certified Deposition Reporters
888.272.0022   818.343.7040   Fax 818.343.7119   www.benhyatt.com

1    Q.    What did he say that in your opinion was rude?

2    A.    It was the way he used his tone of voice.  It

3  was -- I basically told him that I worked in debt

4  collection and I am familiar with the debt practices and

5  he specifically said that since I worked in the debt

6  collection that I shouldn't have a debt.

7    Q.    He said since you worked in debt collection you

8  shouldn't have a debt?

9    A.    Yes.  It was something in those words.  I can't

10  tell you the exact words.

11    Q.    Do you recall him saying anything else?

12    A.    No.

13    Q.    Did you say anything else in the conversation

14  that you can recall?

15    A.    Basically that I was going to call an attorney.

16    Q.    Now, when you told him that they were violating

17  the FDCPA what were you referring to?

18    A.    They would call and state on my answering

19  machine several times that the script -- the FDCPA

20  script and they can't do that in California.

21    Q.    When you say, "the FDCPA script," what do you

22  mean?

23    A.    "This is an attempt to collect a debt."  I

24  can't remember it all, but that is how it goes.

25    Q.    Do you know what a Foti message is?

Ben Hyatt Certified Deposition Reporters
888.272.0022  818.343.7040  Fax 818.343.7119  www.benhyatt.com

Andrea Beard - 6/30/2011

1      A.   No.

2      Q.   So tell me about these messages.  It started

3  off right away by saying, "This is an attempt to collect

4  a debt"?

5      A.   Yes.

6      Q.   These messages were left on your answering

7  machine?

8      A.   Several times.

9      Q.   Do you have any of these messages still on your

10 machine?

11     A.   No.

12     Q.   And they are not recorded anywhere else that

13 you could obtain?

14     A.   No.  I don't have the telephone anymore.

15     Q.   Can you give me an estimate as to how many

16 messages were left?

17     A.   I would say more than seven.

18     Q.   And when you refer to them as violating FDCPA

19 you are only referring to the fact that they were

20 leaving messages that were not complaint with FDCPA?

21     A.   The beginning of the phone call was towards the

22 FDCPA violation and he became rude.

23     Q.   Now again, when you say, "rude," you mean he

24 said something to the fact that since you worked in debt

25 collection you shouldn't owe a debt?

Ben Hyatt Certified Deposition Reporters
888.272.0022   818.343.7040   Fax 818.343.7119   www.benhyatt.com

Andrea Beard - 6/30/2011

1      A.    Yeah.  He can't say that to me.

2      Q.    And why can't he say that?

3      A.    Because he is making me feel bad, terrible

4    about my debt and you can't do that.

5      Q.    When you say, "you can't do that," are you

6    referring to the statute, FDCPA?

7      A.    No.  I am referring to everything -- debt

8    collection in total.

9      Q.    And you would know that from your training?

10     A.    Yes.

11     Q.    Now, these messages that were left on your

12   machine, were they pre-recorded messages or were they

13   messages with a live person, if you know?

14           MR. SIDER:  Objection.  Compound.  But please

15   do answer.

16           THE DEPONENT:  It was a recording.

17   BY MR. JOHANSSON:

18     Q.    No messages from a live person as far as you

19   know?

20           MR. SIDER:  Objection.  Compound, calls for

21   speculation.  Please do answer.

22           THE DEPONENT:  Not as far as --

23   BY MR. JOHANSSON:

24     Q.    Could you give me the answer again?

25     A.    Not as far as I know.

Ben Hyatt Certified Deposition Reporters
888.272.0022   818.343.7040   Fax 818.343.7119   www.benhyatt.com

**Andrea Beard - 6/30/2011**

```
1      Q.    Thank you.  Now, other than this conversation

2   with a gentleman do you recall any other conversation

3   with anyone from Sentry Credit?

4      A.    No.

5      Q.    Do you know what type of debt they were calling

6   about -- Sentry Credit?

7      A.    No.

8      Q.    So as you sit here today you don't know which

9   debt it was?

10     A.    No.

11     Q.    And you don't know if you owe that debt or not?

12     A.    I am sure I owe a debt if they are calling.

13     Q.    But you don't know the specific debt they are

14  calling about?

15     A.    No.

16     Q.    Have you ever operated any business?

17     A.    Have I operated a business?

18     Q.    Yeah.

19     A.    No.

20     Q.    Let me ask you about the time frame.  I will

21  withdraw that.

22           While working for West Asset Management did you

23  ever pay for any business expenses using your credit

24  card?

25     A.    Yes.
```

**Ben Hyatt Certified Deposition Reporters**
**888.272.0022   818.343.7040   Fax 818.343.7119   www.benhyatt.com**

Andrea Beard - 6/30/2011

1    Q.   How do you know that this debt is a consumer

2  debt?

3    A.   I informed you I don't know what type of debt

4  it is.

5    Q.   Let me attach the complaint as Exhibit A.

6         (Exhibit A was marked for identification.)

7  BY MR. JOHANSSON:

8    Q.   If you could just review Exhibit A and let me

9  know when you are done.

10        MR. SIDER:   Mr. Johansson, do you have a copy I

11  can look at?   Thank you.

12        THE DEPONENT:   I am done.

13  BY MR. JOHANSSON:

14    Q.   Have you ever seen this document before?

15    A.   Yes.

16    Q.   On the last page of the document, I believe it

17  is page 5 on the bottom, that verification says, "Andrea

18  Beard."   Is that your signature up above that?

19    A.   Yes.

20        MR. SIDER:   Mr. Johansson, if I may, when you

21  were referring to "consumer debt" do you want to state

22  on the record what you mean by "consumer debt" as a

23  clarification for Ms. Beard?

24        MR. JOHANSSON:   Well, I don't think I need to

25  do that since she doesn't even know --

Ben Hyatt Certified Deposition Reporters
888.272.0022   818.343.7040   Fax 818.343.7119   www.benhyatt.com

**Andrea Beard - 6/30/2011**

```
1        BY MR. JOHANSSON:

2        Q.   You don't know which company the debt was --

3   you know nothing about which debt that was; is that

4   correct?

5        A.   No.

6        Q.   If you can go to factual allegations -- it is

7   page 2.  It starts about line 19.

8        A.   Okay.

9        Q.   Number 12 says, "Defendant placed up to seven

10  collection calls to plaintiff every day."  Is that an

11  accurate statement?

12       A.   It may be accurate.  It is an estimate.

13       Q.   It is an estimate?

14       A.   Um-hum.

15       Q.   Do you know if Sentry Credit called you

16  multiple times a day on several occasions?

17       A.   They did.

18       Q.   How many times -- how many days would you

19  estimate there were multiple calls from Sentry Credit?

20       A.   It was over a period of months.  It was so many

21  calls that I had to take the phone off the hook.

22       Q.   I think you testified earlier that your number

23  was 209-952 -- that is the correct number, right, on

24  number 13?

25       A.   Yes.
```

**Ben Hyatt Certified Deposition Reporters**
**888.272.0022   818.343.7040   Fax 818.343.7119   www.benhyatt.com**

Andrea Beard - 6/30/2011

1      Q.   On number -- on line 23 it says,

2   "425-740-5400."  Is it your understanding that is Sentry

3   Credit's number?

4      A.   Yes.

5      Q.   Are you alleging that Sentry Credit called you

6   from any other number other than 425-740-5400?

7      A.   They may have.

8      Q.   But don't know that?

9      A.   I am not familiar with the telephone numbers --

10  exactly memorized, but this is most likely the number

11  that they called from that day.

12     Q.   So you are not sure if this is the number?

13     A.   This is the number.

14     Q.   Okay.  If you look at line 14 or -- paragraph

15  14 it says, "Defendant leaves voicemail messages for

16  plaintiff and fails to identify its business name."  Is

17  that an accurate statement?

18     A.   Yes.

19     Q.   So when they left voice messages -- you said

20  that -- you know, "We are calling about a debt

21  collection," but they never stated the name of the

22  company?

23     A.   No, they did not.

24     Q.   Could you tell me what it said?  Do you recall

25  what it said?

Ben Hyatt Certified Deposition Reporters
888.272.0022   818.343.7040   Fax 818.343.7119   www.benhyatt.com

**Andrea Beard - 6/30/2011**

1        MR. SIDER:  I am going to object.  That is

2   compound.  Can you please answer?

3        THE DEPONENT:  Basically they left the message

4   that I informed you earlier -- the recorded message.

5   BY MR. JOHANSSON:

6        Q.   Could you remind me what the recorded message

7   says, if you can recall?

8        A.   "This is an attempt to collect a debt and any

9   information obtained will be used for that purpose."

10       Q.   Was that all the message said?

11       A.   It said more, but that is what I remember.

12       Q.   Do you recall if the message said anything

13   like, "If you are not this person don't continue

14   listening"?

15       A.   It did not say that.  I know --

16       Q.   Can you recall anything else about the message

17   or the voicemails?

18       A.   It left an 800 number to call back.

19       Q.   Anything else?

20       A.   That's it.

21       Q.   Was it the same message each time?

22       A.   I didn't listen to the whole messages.  I just

23   remember the beginning.

24       Q.   But do you recall if they were different

25   messages?

**Ben Hyatt Certified Deposition Reporters**
888.272.0022   818.343.7040   Fax 818.343.7119   www.benhyatt.com

1       A.    No.

2             MR. SIDER:  Let me clarify.  Do you mean, no,

3       you don't recall or, no, there weren't different

4       messages?

5             THE DEPONENT:  No, there weren't different

6       messages.

7       BY MR. JOHANSSON:

8       Q.    As far as you know the messages were all the

9       same?

10      A.    Yes.

11      Q.    If you go to paragraph 15 on page 3A it says,

12      "Defendant violated FDCPA by contacting plaintiff at a

13      time plaintiff had noted to be inconvenient."  Did you

14      ever tell Sentry Credit that it was inconvenient for

15      them to call you?

16      A.    I advised them to stop calling me.

17      Q.    And when -- was that during the conversation

18      you had with a man that we already talked about?

19      A.    No.

20      Q.    In a prior conversation?

21      A.    Well, it wasn't a conversation per se.  I would

22      pick up the phone (indicating), "Stop calling me."

23      Q.    Okay.  When you said you would pick up the

24      phone and say, "Stop calling me," do you know if that

25      was a live person or just a recording?

Andrea Beard - 6/30/2011

1      A.    It was a live person.

2      Q.    How many times did you do that?

3      A.    Several.

4      Q.    More than five?

5      A.    Yes.

6      Q.    More than 10?

7      A.    Yes.

8      Q.    When you worked for West Asset Management

9  whenever you made a call did you have to write down

10  anything in a log?

11     A.    No.  It was typed in the computer.  We had --

12  we wrote down telephone numbers.

13     Q.    Did you also write down the contents of the

14  conversation you had with the person that you were

15  calling?

16     A.    In the computer.

17     Q.    So you are familiar with debt collection

18  companies, that they take notes?

19          MR. SIDER:  Objection.  Assumes facts not in

20  evidence, calls for speculation.  But you can answer.

21          THE DEPONENT:  They also erase notes.

22  BY MR. JOHANSSON:

23     Q.    How do you know they erase notes?

24     A.    Because if something is in there that the

25  company does not want they have it erased out of the

**Andrea Beard - 6/30/2011**

```
 1   files.

 2        Q.   How do you know that?

 3        A.   Because we have had it done before.

 4        Q.   You did it?

 5        A.   No.  But you contact the supervisor and the

 6   supervisor erases it.

 7        Q.   So co-workers at West Asset Management did it?

 8        A.   Yes.  Not co-workers but the managers or

 9   supervisors.

10        Q.   Did you ever write to Sentry Credit and say,

11   "Stop calling me"?

12        A.   No.

13        Q.   And why not?

14             MR. SIDER:  Objection.  Argumentative.  But you

15   can answer, please.

16             THE DEPONENT:  I just didn't.

17   BY MR. JOHANSSON:

18        Q.   No particular reason?

19        A.   No.

20        Q.   Off the record.

21             (Off the record.)

22             MR. JOHANSSON:  I have just confirmed here with

23   Counsel that plaintiff is not seeking actual or

24   emotional distress damages in this case.

25             MR. SIDER:  I can confirm that.  For the
```

**Ben Hyatt Certified Deposition Reporters**
**888.272.0022   818.343.7040   Fax 818.343.7119   www.benhyatt.com**

1   record, my name is Jacob, last name Sider, S-i-d-e-r,

2   and I am not working for Krohn & Moss as an employee. I

3   am a solo practitioner specially appearing. Thank you.

4         MR. JOHANSSON: And Mr. Sider actually called

5   Ryan Lee of Krohn & Moss to confirm that plaintiff

6   wasn't seeking actual -- is that correct?

7         MR. SIDER: Yes, that's correct.

8         MR. JOHANSSON: So, therefore, I am not going

9   to go into any questioning regarding any medical issues

10  and stuff.

11     BY MR. JOHANSSON:

12     Q.   Could you recall any contacts or any

13  communications between you and Sentry Credit that I have

14  not discussed here with you today?

15     A.   No.

16     Q.   I think that is all I have.

17          EXAMINATION BY MR. SIDER:

18     Q.   If I may ask a couple of questions -- and also,

19  as Mr. Johansson said earlier, I will caution you if

20  there is anything that you answer here that conflicts

21  with anything you said earlier it could be used to

22  reduce your credibility, which is certainly not my goal.

23  I just want to clarify a couple of things.

24         Do you have an understanding of what the term

25  "consumer debt" means?

1      A.   It is a type of debt.  I can't say it offhand,

2    but I think it is regarding -- I can't word it right.

3      Q.   Take your time.

4      A.   It is like debt because of -- some debt is

5    different, like checks or things like that.  Consumer

6    debt is other than that, basically like credit cards,

7    car payments, things like that.

8      Q.   Okay.  So I believe -- and if I am incorrect

9    Mr. Johansson can correct me.  But I believe your

10   testimony earlier is that when you are referring to the

11   phone calls that Sentry Credit allegedly made to you you

12   stated that you didn't know what kind of debt they were

13   asking about.  What did you mean by that statement?

14     A.   I didn't know who the debt was for.  I didn't

15   know which -- I didn't know if it was credit card, car

16   payment or any -- that is what I meant when I didn't

17   know what kind of -- the debt person that it was.

18     Q.   Okay.  To your knowledge have you ever gotten

19   into debt with anything related to a business that you

20   have owned?

21     A.   No.

22     Q.   Okay.  So do you have any reason to believe

23   that any of the debt that you have accrued -- and I am

24   referring to the operative period -- excuse me.  I just

25   want to make sure I am clear as to time.

Ben Hyatt Certified Deposition Reporters
888.272.0022   818.343.7040   Fax 818.343.7119   www.benhyatt.com

1          Do you believe any of the debt you have accrued

2     in the last five years would be anything other than a

3     consumer debt?

4          A.    No.

5          Q.    Okay.  Do you believe that any of the debt that

6     you have accrued in the last 10 years would be anything

7     other than a consumer debt?

8          A.    No.

9          Q.    That is all I have.  Thank you.

10         FURTHER EXAMINATION BY MR. JOHANSSON:

11         Q.    You did testify earlier though, you did pay for

12    some business debts for your previous company, West

13    Asset Management; is that correct?

14         A.    It wasn't for West Asset.

15         Q.    Who was it for?

16         A.    It was for me.  You said while I was at West

17    Asset did I pay for any business debt.

18         Q.    Correct.

19         A.    I did, for me.

20         Q.    What type of business debt?

21         A.    It was -- it was -- I was opening a company,

22    but it never opened.

23         Q.    So, in fact, this debt could have been a

24    business debt because you have incurred a business debt?

25         A.    No.  I paid for everything.

Ben Hyatt Certified Deposition Reporters
888.272.0022   818.343.7040   Fax 818.343.7119   www.benhyatt.com

```
1      Q.   You paid for all that?

2      A.   Yes.

3      Q.   Do you know if you used a credit card to pay

4   it?

5      A.   I am not sure if I used a credit card or not.

6      Q.   You couldn't tell me which credit card or which

7   bank it was from?

8      A.   It was from Bank of America.  It was my

9   account.  Actually I used my account -- Bank of America

10  checking account.

11     Q.   Your checking account?

12     A.   Yes.

13     Q.   All right.  I think that's all I have.

14          FURTHER EXAMINATION BY MR. SIDER:

15     Q.   If I may, do you remember what year it was that

16  you paid for those items for the business you were going

17  to start up -- excuse me -- that you borrowed the money?

18     A.   I didn't borrow the money.  I paid my own

19  money.  It was my money.  I didn't borrow anything.

20     Q.   Okay.  I apologize.  I thought that you had

21  said that you had gone in debt regarding --

22     A.   No, I did not go in debt.  You said did I pay

23  for any business --

24          MR. JOHANSSON:  No.

25     BY MR. SIDER:
```

**Ben Hyatt Certified Deposition Reporters**
**888.272.0022   818.343.7040   Fax 818.343.7119   www.benhyatt.com**

**Andrea Beard - 6/30/2011**

1    Q.   Okay.  So you paid up front for any of those

2  business expenses?

3    A.   Yes.  I never went in debt for it.

4    Q.   So you have no reason to believe that any of

5  the debt that any of the debt collectors have contacted

6  you in the past decade for would be anything

7  business-related?

8    A.   That's correct.

9         FURTHER EXAMINATION BY MR. JOHANSSON:

10   Q.   Let me ask a couple more.  When did you attempt

11  to start a business?

12   A.   I would say 2000 -- maybe 2006 to 2008.

13   Q.   And what kind of business were you attempting

14  to start?

15   A.   It was retail.

16   Q.   What type of retail?

17   A.   Clothing.

18   Q.   What kind of expenses did you incur while you

19  were attempting to start the business?

20   A.   Web site expenses.  I bought clothing.

21   Q.   Anything else?

22   A.   The business license, a retail license.

23   Q.   Anything else that you can recall?

24   A.   Not that I can recall.

25   Q.   But you said -- and the business never actually

**Ben Hyatt Certified Deposition Reporters**
**888.272.0022   818.343.7040   Fax 818.343.7119   www.benhyatt.com**

1    started?

2        A.    No.

3        Q.    But you did get a license?

4        A.    Yes.

5        Q.    Did you have a name for the business?

6        A.    Sunday Best.  And I have a business account for

7    that too.

8        Q.    You had a business account too?

9        A.    Yes, at Bank of America.

10       Q.    When you say, "a business account," do you

11   have, like, a business credit card?

12       A.    It was a debit card.

13       Q.    A checking account or a debit card?

14       A.    Yeah, uh-huh.

15       Q.    And it was with that account that you paid for

16   all these expenses?

17       A.    Some I paid cash, yeah.

18       Q.    None of your credit cards?

19       A.    No.  I am not sure, but I doubt it.

20       Q.    Okay.  That is all I have.

21            MR. SIDER:  That is all I have.

22            MR. JOHANSSON:  I would propose to relieve the

23   court reporter of her duties under the code and -- do

24   you want the transcript?

25            MR. SIDER:  Can you please contact Krohn & Moss

Ben Hyatt Certified Deposition Reporters
888.272.0022   818.343.7040   Fax 818.343.7119   www.benhyatt.com

```
 1   when it is ready?

 2           MR. JOHANSSON:  The deponent will have 20

 3   days -- is that fine?  It should be pretty short.

 4           MR. SIDER:  Yeah.

 5           MR. JOHANSSON:  She will have 20 days to review

 6   and sign the transcript under penalty of perjury.

 7   Mr. Lee or counsel that is present, Mr. Sider, will

 8   notify me of any changes within 10 days after she has

 9   signed.

10           MR. SIDER:  Yes.

11           MR. JOHANSSON:  And if for some reason the

12   original is unavailable, unsigned, lost or destroyed a

13   certified copy may be used with the same force and

14   effect.  So stipulated?

15           MR. SIDER:  Yes.

16           (Deposition concluded at 11:01 a.m.)

17       I declare under penalty of perjury under the laws of

18   the State of California that the foregoing is true and

19   correct.

20           Executed on _____, 2011, at

21   _____, California.

22

23

24           _____

25                       ANDREA BEARD
```

Page 40

1            I, the undersigned, a Certified Shorthand

2  Reporter of the State of California, do hereby certify:

3            That the foregoing proceedings were taken

4  before me at the time and place herein set forth; that

5  any witnesses in the foregoing proceedings, prior to

6  testifying, were duly sworn; that a record of the

7  proceedings was made by me using machine shorthand

8  which was thereafter transcribed under my direction;

9  that the foregoing transcript is a true record of the

10 testimony given.

11           Further, that if the foregoing pertains to

12 the original transcript of a deposition in a Federal

13 Case, before completion of the proceedings, review of

14 the transcript [  ] was [  ] was not requested.

15           I further certify I am neither financially

16 interested in the action nor a relative or employee

17 of any attorney or party to this action.

18           IN WITNESS WHEREOF, I have this date

19 subscribed my name.

20

21 Dated:  _July 13, 2011_

22

23                          _ELIZABETH A. WILLIS-LEWIS_

24                          CSR No. 12155

25

Andrea Beard - 6/30/2011

```
 1                            INDEX

 2

 3    THURSDAY, JUNE 30, 2011

 4

 5    WITNESS                              EXAMINATION

 6

 7    ANDREA BEARD

 8

 9              (By Mr. Johansson)          3, 36, 38

10              (By Mr. Sider)                34, 37

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Ben Hyatt Certified Deposition Reporters
888.272.0022   818.343.7040   Fax 818.343.7119   www.benhyatt.com

**Andrea Beard - 6/30/2011**

```
 1                    DEFENDANTS' EXHIBITS

 2                       ANDREA BEARD

 3

 4    LETTER          DESCRIPTION                   IDENTIFIED

 5    Exhibit A    Complaint and Demand for Jury          27
                   Trial.
 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Ben Hyatt Certified Deposition Reporters
888.272.0022   818.343.7040   Fax 818.343.7119   www.benhyatt.com

# ERRATA SHEET

Pursuant to the Federal Rules of Procedure and the California Code of Civil Procedure, any changes in form or substance you wish to make to your deposition testimony shall be included in the deposition transcript. Should you have any corrections, please enter them below.

PAGE _____   LINE _____   CHANGE: _____

REASON: _____

PAGE _____   LINE _____   CHANGE: _____

REASON: _____

PAGE _____   LINE _____   CHANGE: _____

REASON: _____

PAGE _____   LINE _____   CHANGE: _____

REASON: _____

PAGE _____   LINE _____   CHANGE: _____

REASON: _____

PAGE _____   LINE _____   CHANGE: _____

REASON: _____

PAGE _____   LINE _____   CHANGE: _____

REASON: _____

PAGE _____   LINE _____   CHANGE: _____

REASON: _____

PAGE _____   LINE _____   CHANGE: _____

REASON: _____

PAGE _____   LINE _____   CHANGE: _____

REASON: _____

PAGE _____   LINE _____   CHANGE: _____

REASON: _____

PAGE _____   LINE _____   CHANGE: _____

REASON: _____

PAGE _____   LINE _____   CHANGE: _____

REASON: _____

# NOTES

| PAGE NO. | LINE NO. | NOTES |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |